```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF TENNESSEE
                           AT GREENEVILLE
```

| | |
|---|---|
| LISA G. SHELTON, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:10-CV-135 |
| v. ) | |
| ) | *Mattice / Lee* |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Lisa G. Shelton ("Plaintiff") brings this action under 42 U.S.C. § 402(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff disability insurance benefits ("DIB"). Specifically, Plaintiff challenges the decision of an Administrative Law Judge ("ALJ") who found that Plaintiff was not disabled because she was capable of performing her past, sedentary-level job. Plaintiff seeks a determination by the Court that she is disabled and an award of benefits or a remand. For the reasons stated below, I **RECOMMEND**: (1) Plaintiff's motion for judgment on the pleadings [Doc. 12] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 17] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED WITH PREJUDICE**.

## I. ADMINISTRATIVE PROCEEDINGS

On May 30, 2007, Plaintiff alleged she had been disabled since March 9, 2007, due to back problems (Tr. 58-59). After her claim was denied, Plaintiff requested a hearing, which was held on June 23, 2008 (Tr. 19-34). The ALJ determined Plaintiff was not disabled (Tr. 12-18) and subsequently the Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the ALJ's decision the final decision of the Commissioner. This matter is now ripe for judicial review.

## II. ELIGIBILITY FOR DIB

The Social Security Administration determines eligibility for DIB by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(I-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). Between steps three and four, the ALJ assesses the claimant's residual functional capacity ("RFC"). *Id.* at 653. The claimant bears the burden to prove the severity of her impairments, but the burden shifts to the Commissioner at step five to show there are jobs she can perform despite her impairments. *Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

## III.    FACTUAL BACKGROUND AND ALJ'S FINDINGS

Plaintiff claimed disability following a series of orthopedic surgeries, including a cervical fusion in 2005, a lumbar fusion in June 2006, and a ulnar nerve release in March 2007. Plaintiff claims that while out of work for her ulnar release, she began to experience increasing low back pain resulting in an inability to return to work because she could not sit, stand, lift or bend [Doc. 19 at Page ID# 104; *see also* Tr. 65]. Plaintiff's medical records are extensive, but it will not be necessary to summarize all of the records here. This summary will instead focus on the pertinent impairments as defined by the parties' arguments.

### A.    Medical Evidence

Plaintiff had lumbar back fusion surgery at L5-S1 on June 2, 2006, performed by her treating orthopedic surgeon, Robert S. Davis, M.D. (Tr. 257-58). Following several post-operative follow-up visits, on August 30, 2006, Dr. Davis noted Plaintiff's complaints of worsening back pain since returning to her sedentary job, but he allowed her to return to light duty work with an hourly restriction of 4.5 hours per day and instructed her to return in one month (Tr. 269-70). On September 27, 2006, Dr. Davis noted improvement and he recommended some activity restrictions for one month (Tr. 271-72). The following month, Dr. Davis's note does not mention restrictions (Tr. 273). Then, in December 2006, Dr. Davis released Plaintiff to her primary care physician for symptom management after finding she was clinically stable and had no new neurological complaints and could pursue her activities as tolerated (Tr. 240). Dr. Davis next saw Plaintiff the very next month on January 22, 2007 for left upper extremity (arm) pain (Tr. 241-42). After a few more visits about her arm, Dr. Davis performed ulnar nerve release surgery on Plaintiff in March

3

2007 (Tr. 292-95).

In an April 5, 2007 treatment note, Plaintiff's family physician, Thomas Conway, M.D., noted that Plaintiff was technically still under the care of Dr. Davis for her ulnar nerve release surgery, but he found that due to her combined orthopedic impairments and resulting pain, Plaintiff could only sit for 30 minutes, stand for 15 minutes, and walk for 15 to 20 minutes and he opined that with all her musculoskeletal problems she would be unable to perform any gainful employment for the foreseeable future (Tr. 507). He also wrote a "To Whom It May Concern" letter stating the same opinion and findings on the same date (Tr. 348). In an April 25, 2007 attending physician statement, apparently completed for a disability insurer, Dr. Conway checked a portion of the form opining that Plaintiff had "severe limitation of functional capacity; incapable of minimum (sedentary) activity." (Tr. 447).

On May 16, 2007, Dr. Davis reported that Plaintiff had done well since her ulnar nerve surgery, that she had no new neurological complaints, that she would return to her primary care physician for symptom management, and that Plaintiff could pursue her activities as tolerated (Tr. 516). Dr. Conway's May 30, 2007 progress note two weeks later recounts Plaintiff's multiple surgeries and states it does not appear that Plaintiff can return to full-time work because she has difficulty sitting for more than thirty minutes and standing or walking more than fifteen minutes (Tr. 511).

On July 2, 2007, Lloyd A. Walwyn, M.D., reviewed Plaintiff's record and determined that Plaintiff could lift up to fifty pounds occasionally and up to twenty-five pounds frequently and could stand and/or walk and sit for about six hours in an eight-hour day (Tr. 467). Dr. Walwyn noted the opinion of Dr. Conway that Ms. Shelton could sit for no more than thirty minutes or stand/walk for

4

no more than fifteen minutes, and stated that Dr. Conway's assessment was not supported by the totality of the medical record (Tr. 472).

On August 9, 2007, Dr. Davis saw Plaintiff again in follow-up to her ulnar nerve surgery and noted she could pursue activities as tolerated (Tr. 517). On October 23, 2007, Larry Poe, M.D., reviewed an MRI of Plaintiff's lumbar spine, and compared it to an MRI from January 2006 (Tr. 977). Dr. Poe noted that after the January 2006 study, Plaintiff had back fusion surgery at L5-S1, and he noted no complications and no neural displacement (Tr. 977). At L2-3, Dr. Poe noted the development of a right posterolateral extrusion, which displaced the intraspinal right L3 root, and at L1-2 a "tiny left paracentral cranial extrusion . . . without neural displacement" (Tr. 977). There was no central canal stenosis, but there was moderate right and milder left facet arthrosis (Tr. 977).

On October 29, 2007, Patrick Bolt, M.D. saw Plaintiff upon a referral from Harold Cates, M.D., and Plaintiff's chief complaint was noted to be low back pain and bilateral lower extremity pain (Tr. 964). He noted that she was not working and that she was trying to get disability due to her low back pain and lower extremity pain (Tr. 965). In her new patient questionnaire, Plaintiff reported her pain as a constant seven out of ten in the back, and a frequent six out of ten in the leg. (Tr. 967, 964). Dr. Bolt noted that with the absence of neural compression on Plaintiff's MRI, he was concerned that her bilateral lower extremity pain may represent radicultis/neuritis, particularly at the bilateral L5 nerve root (Tr.966). He was also concerned by her increase in low back pain which he said may represent a pseudoarthrosis or infection" and he ordered a CT scan of her lumbar spine to rule out a pseudoarthrosis and infection (Tr.966).

On November 2, 2007, a radiologist, Hugh H. DeLozier, M.D., found the CT scan revealed very mild "lumbar scoliosis possibly due at least in part to muscle spasm, with a previous lumbar

5

fusion procedure at L5-S1 appearing satisfactory" and mild to moderate flattening of the L2-3 disc (Tr. 757). Dr. DeLozier also noted that he did not see any acute lumbosacral pathology, nor did he see a focal disc herniation (Tr. 758). Upon Dr. Bolt's review of the CT scan on November 5, 2007, however, Dr. Bolt found "no evidence of clear fusion" and he diagnosed an L5-S1 pseudoarthrosis (which the parties agree is a nonunion of the fused bones), but also stated "this does not necessarily require further surgical intervention." (Tr. 954). He also noted residual stenosis at L5-S1 (Tr. 954). Also on November 5, 2007, Plaintiff reported her pain as the same constant seven out of ten in the back and a now constant six out of ten in the leg (Tr. 954).

In an assessment form dated November 9, 2007, Dr. Conway opined that Plaintiff could sit for two hours a day, 20 minutes at a time, stand/walk for one and a half hours a day, 15 minutes at a time; would require up to three hours of bed rest during the work day; would require extra rest breaks during the day; would have chronic absences; and would be unable to sustain a 40-hour work week (Tr. 556-58).

On November 16, 2007, Dr. Bolt administered an epidural steroid injection to Plaintiff's lumbar spine (Tr. 946-48). Ten days later, on November 26, 2007, Plaintiff reported her pain as improved to four out of ten in the back and in the leg (Tr. 944-46). Dr. Bolt noted that Plaintiff had an excellent response to the steroid injection, scheduled her for physical therapy, and stated that he would continue to see her on an as-needed basis (Tr. 944).

Dr. Bolt saw Plaintiff again on January 28, 2008, and she complained that her back pain had significantly increased since she had lifted trash two weeks prior (Tr. 934). Dr. Bolt described the pain as primarily in the right buttock and remarked that Plaintiff had responded to injections at L5 previously, and he noted her pain seemed to be new (Tr. 934). Plaintiff reported her pain as having

increased to ten out of ten in the back and in the leg (Tr. 934-35). Dr. Bolt ordered a new MRI and noted this was the worst pain Plaintiff had ever experienced (Tr. 934). On January 31, 2008, the radiologist, Dr. David A. Forsberg, concluded that the MRI showed Plaintiff was status post L5-S1 fusion, that normal alignment was present, and that the MRI showed "a right paracentral/lateral disc protrusion at the L2-3 level with narrowing of each lateral neural exit foramen" and an impression of "right paracentral/lateral L2-3 HNP" (herniated nucleus pulposis) (Tr. 931).

On February 1, 2008, Dr. Bolt administered epidural steroid injections at L2 and L3 (Tr. 928-29). Two weeks later, on February 18, 2008, Plaintiff reported to Dr. Bolt that her pain was a constant five out of ten in the back and leg (Tr. 926-28). Dr. Bolt noted "reduced sensation to light touch in the right L3 distribution," a "positive straight leg raise," and he stated "I believe the patient is most symptomatic for her right L2-3 HNP" (Tr. 926). Dr. Bolt reported Plaintiff had marked improvement, that he wanted her to start physical therapy, and that he planned to see her again in one month to decide upon surgical or non-surgical treatment (Tr. 926-27).

On March 24, 2008, Plaintiff reported her pain had increased to eight out of ten in the back and in the leg and Dr. Bolt described her pain as being "back to baseline." (Tr. 921-22). On April 25, 2008, Dr. Bolt provided another epidural steroid injection at L5- S1 (Tr. 919-20) and on May 5, 2008, Plaintiff reported to Dr. Bolt that her pain was a constant seven out of ten in the back and in the leg (Tr. 916-17). On that same date, Dr. Bolt noted the injection provided some improvement in Plaintiff's leg, but not in her low back (Tr. 916). Dr. Bolt noted Plaintiff continued to have full strength and sensation in her lower extremities with negative straight leg raising for both legs (Tr. 916). Although Dr. Bolt reported "mild benefit" from the injection, he also noted that Plaintiff reported she was not where she wanted to be and that she was not interested in further surgery,

7

which he found understandable (Tr. 916). Dr. Bolt recommended that she continue her home exercise program and continue to take "occasional as needed medication" (Tr. 916).

On June 9, 2008, Dr. Bolt saw Plaintiff and she reported she had recently been on a trip and had a setback with increased pain in her right thigh and groin (Tr. 980). Dr. Bolt commented that in the past such pain had responded to epidural steroid injections (Tr. 980). He noted Plaintiff continued to have pain in her low back and she stated her pain was 50% in the back and 50% in the leg at a constant and six out of ten (Tr. 980). Diagnostic testing revealed negative straight leg raising tests and full strength and sensation in Plaintiff's legs (Tr. 980). Although Plaintiff requested an injection, Dr. Bolt commented that this was not a good idea as he did not want to over-treat with spinal injections (Tr. 980). He noted that Plaintiff did not want to have surgery and he recommended that she "wait this out as she has had improvements in the past" (Tr. 980). Dr. Bolt stated that if there was no improvement in one month, he would reconsider repeating the injections (Tr. 980).

### B. Plaintiff's Testimony

Plaintiff was 50 years old when she testified at her hearing (Tr. 22). She earned an Associate's Degree and worked for almost eighteen years as a customer service representative for an electric company (Tr. 22). Her job primarily involved sitting and her duties included answering the phone, working on the computer, taking payments, and answering customer problems (Tr. 22). Although she agreed that the physical requirements of her past work were not demanding, Plaintiff testified that constant pain in her lower back and pain that radiated from her hips to her legs and feet, would preclude her from performing that job (Tr. 23). Plaintiff took Ultram about four times a day for back pain and, if the pain got really bad, she took Percocet or Hydrocodone (Tr. 23-24). Those

8

stronger medications made her feel terrible, however, so she tried not to take them unless absolutely necessary (Tr. 24). On the date of her hearing, Plaintiff rated her pain as a "3," but also stated that she could not sit for long periods of time without "wiggling a little bit." (Tr. 24).

### C. ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in gainful activity since her alleged onset date (Tr. 14). At step two, the ALJ found that Plaintiff had severe musculoskeletal impairments (Tr. 14). The ALJ concluded at step three, however, that none of Plaintiff's impairments was severe enough to meet any listing (Tr. 14). The ALJ then evaluated Plaintiff's RFC and found she was able to perform the full range of sedentary work (Tr. 15). In reaching this finding, the ALJ gave controlling weight to the opinion of Dr. Davis, the Plaintiff's treating back surgeon in 2006, and he found Plaintiff's subjective account of the intensity, persistence and limiting effects of her symptoms was not credible (Tr. 17). Finally, at step four, the ALJ observed that Plaintiff's past relevant work as a customer service representative fell within the sedentary occupational base and therefore concluded Plaintiff could perform that work (Tr. 17). Accordingly, he found Plaintiff was not disabled (Tr. 18).

## IV. ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds. First, she argues the ALJ, based on either ignorance or disregard of Dr. Bolt's diagnosis of a pseudoarthrosis, assumed the success of Plaintiff's June 2006 spine fusion without complications and the ALJ minimized the extent of the objective evidence of her disc disease and the severity of her pain. Second, she contends the ALJ erred in rejecting the disabling opinion of her treating physician, Dr. Conway. Third, she contends the ALJ erred in failing to make a "function-by-function" evaluation of Plaintiff's RFC, particularly

9

her ability to sit.

## A.   Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner*, 375 F.3d at (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.

1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

### B. Substantial Evidence

The ALJ's decision found Plaintiff had severe musculoskeletal impairments that imposed significant work-related restrictions on her, limiting her to a full range of sedentary work. Plaintiff argues the ALJ erred when he gave controlling weight to treating surgeon Dr. Davis, who performed Plaintiff's June 2006 surgery and released her to return to sedentary work in August 2006, but did not treat her back beyond December 2006, although he continued to treat her for ulnar nerve release. Regarding Plaintiff's back surgery, the ALJ found:

> The record reveals that [Plaintiff] underwent . . . L5-S1 fusion on June 2, 2006 . . . . Progress was successful and significant complications were not found to exist . . . .

(Tr. 16). Plaintiff contends the ALJ erroneously found that Plaintiff's back surgery was successful and without complication, without mentioning or offering any reason for rejecting Dr. Bolt's conclusion that it resulted in a pseudoarthrosis – a nonunion – instead of the intended surgical fusion. Plaintiff also claims the ALJ erred with respect to his findings about the objective evidence supporting, and the extent of the pain she suffered, due to her herniated nucleus pulposis ("HNP") at L2-3, and her pain in general.

Although the ALJ did not specifically mention Dr. Bolt's diagnosis of a pseudoarthrosis, I

11

**FIND** the ALJ's decision was supported by substantial evidence.[1] While Dr. Bolt diagnosed a pseudoarthrosis, his notes reflect that he told Plaintiff the finding did "not necessarily require further surgical intervention." (Tr. 954). Instead, he treated Plaintiff with injections and physical therapy, generally finding Plaintiff responded well to such treatment. (*See e.g.*, Tr. 944, 926). When Dr. Bolt did note increased pain, he attributed it to an aggravation, not to failed fusion surgery or a pseudoarthrosis (Tr. 934, 980).

The mere diagnosis of a pseudoarthrosis[2] and a HNP at L2-3 does not indicate their severity. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (concluding that a diagnosis alone did not establish an ailment's severity). The applicable regulation, 20 C.F.R. § 404.1529, in conjunction with Social Security Ruling ("SSR") 96-7p, describes a two-part process for assessing the credibility of a claimant's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location,

---

[1] It is not necessary to address Plaintiff's improper-post-hoc-rationalization argument because a review of the record shows that the ALJ's decision is supported by substantial evidence as noted herein. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 159 (6th Cir. 2009) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 847 (6th Cir.2005) ("Having conducted our own review of the ALJ's decision and found it supported by substantial evidence, we need not address [claimant's allegations that the district court impermissibly used post-hoc rationalizations to uphold the ALJ's decision].")).

[2] Unfortunately, Dr. Bolt did not complete an assessment of Plaintiff's capabilities and limitations (Tr. 33).

duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531 (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

Plaintiff has not directly challenged the ALJ's finding that her subjective complaints were not entirely credible, instead she focuses on the ALJ's failure to mention the pseudoarthrosis and what she claims is minimization of her HNP and pain. The ALJ recognized that Plaintiff's past work as a customer service representative was primarily a siting job and that Plaintiff claimed she could not perform that job any longer because she was in constant radiating pain. The ALJ found Plaintiff's complaints of pain, however, were not fully credible because they not fully supported by the objective evidence and were contradicted at points in the record. He found her claims of constant, radiating, and disabling pain were not supported by her testimony during the hearing (pain level at three during hearing), her activities of daily living, her course of treatment, the state agency opinions (that she could perform medium exertional work) and her use of medication. These findings are supported by substantial evidence. *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (evidence indicating that a claimant's impairments can be

13

controlled with medication can serve as substantial support for an ALJ's conclusion).

After the MRI in January 2008, Dr. Bolt was able to target the injection to L2 and L3 and he reported Plaintiff was doing remarkably better after the injection as of February 18, 2008 (Tr. 926). By March 24, 2008, Dr. Bolt could report that despite Plaintiff's rating her pain as an "8" she was only occasionally experiencing the right-sided joint and flank pain that had previously been so severe (Tr. 921) and by May 5, 2008, she had straight leg raising tests that produced negative results in both legs (Tr. 916). On June 9, 2008, her straight leg raising tests continued to produce negative results and Plaintiff had full strength and sensation in her legs (Tr. 980).

The record also contains three relevant studies of Plaintiff's lumbar spine that were done after Dr. Davis performed back fusion surgery. Dr. Poe reviewed an MRI from October 2007 (Tr. 977). Dr. Poe said nothing about a pseudoarthrosis and commented that there were no complications from the surgery (Tr. 977). As argued by the Commissioner, the ALJ's statement that the back fusion surgery resulted in no significant complications is a phrase taken directly from Dr. Poe's review of the October 23 MRI (Tr. 977). On November 2, 2007, Dr. DeLozier reviewed the CT scan ordered by Dr. Bolt and he did not report any pseudoarthrosis (Tr. 959). Instead, he noted Plaintiff had undergone a previous lumbar fusion procedure at L5-S1, that she had two fusion cages in the L5-S1 disc space, and that the cages were "apparently in good position" (Tr. 959). Dr. DeLozier also noted some muscle spasm "with a previous lumbar fusion procedure at L5-S1 appearing satisfactory" (Tr. 959). An MRI done on January 30, 2008, which Dr. Forsberg compared with the November 2, 2007 scan, also showed no evidence of a pseudoarthrosis (Tr. 931). These studies are substantial evidence supporting the ALJ's decision. However, even if the ALJ erred by failing to mention the pseudoarthrosis diagnosis, he still addressed the pain Plaintiff experienced from all of

14

her impairments, and found they were not credible to the extent they were inconsistent with the RFC he assessed, a credibility finding Plaintiff has not challenged. I **FIND** the ALJ's decision was supported by substantial evidence in spite of his failure to mention Dr. Bolt's pseudoarthrosis diagnosis.

### C. Dr. Conway's Opinion

In declining to give any significant weight to Dr. Conway's opinion, the ALJ found that Dr. Conway's opinions concerning Plaintiff's limitations to be conclusory and not supported by objective evidence, including diagnostic testing. Plaintiff challenges the ALJ's the rejection of Dr. Conway's opinion.

Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairments that cannot be obtained from the objective medical findings alone or from reports of individual examinations. 20 C.F.R. § 404.1527(d)(2). Accordingly, a treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). If the ALJ does not give controlling weight to a treating source's opinion, he "must

provide 'good reasons for discounting [it], reasons sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting* SSR 96-7p). Those reasons must themselves be supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

The ALJ opined that Dr. Conway may have been responding to Plaintiff's frequent complaints of pain, which, as noted above, the ALJ found were not fully credible. When a treating physician's opinion is based on a claimant's subjective reports which are themselves not credible, it is not error to assign little weight to the opinion. *Vorholt v. Comm'r of Soc. Sec.*, 2011 WL 310700, *6 (6th Cir. 2011) (unpublished) (affirming rejection of treating physician's opinion which relied on the "false record" supplied by the claimant). In addition, Dr. Walwyn, who reviewed the record for the state agency in July 2007, considered Dr. Conway's statement that claimant could not sit for more than thirty minutes at one time and rejected that statement as not substantiated by the totality of the medical record (Tr. 472). As argued by the Commissioner, Plaintiff has provided no examples of Dr. Conway referring to objective findings or even to statements from other physicians of record to support his conclusions. Therefore, because the ALJ gave good reasons for discounting Dr. Conway's opinion, I **FIND** the ALJ's decision to reject Dr. Conway's decision was supported by substantial evidence.

### D. Function-by-Function Analysis

Citing to SSR 96-8p, Plaintiff argues that the ALJ's failed to provide a function-by-function assessment of the Plaintiff's physical limitations, particularly her ability to sit when he determined she had the RFC to perform a full range of sedentary work and thus could perform her past relevant

16

work. Plaintiff argues remand is required because the ALJ failed to make specific and explicit findings as to how long Plaintiff can sit.

As held by the Sixth Circuit,

> SSR 96-8p requires an ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling) . . . capacities of the claimant in determining a claimant's RFC. Although SSR 96-8p requires a "function-by-function evaluation" to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged.

*Delgado v. Commissioner of Social Sec.*, 30 F. App'x 542 (6th Cir. 2002); *accord Knox v. Astrue*, 327 F. App'x 652, 657-58 (7th Cir. 2009) ("Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient."). In arguing that this Court should find the ALJ's decision is deficient and requires remand, Plaintiff contrasts two of the many cases following and interpreting *Delgado*: *Boulis-Gasche v. Astrue*, 2010 WL 596464, *16 (E.D. Tenn., Feb. 16 2010) (requirements of *Delgado* met and claimant's reliance on SSR 96-8p "misplaced, because she does not identify any work-related function that was not considered by the ALJ") and *Roberts v. Astrue*, 2009 WL 1651523, *8-9 (M.D. Tenn. June 11, 2009) (requirements of *Delgado* not met because function at issue "deserved some explicit attention in the ALJ's decision pursuant to SSR 96-8p"). As in *Boulis-Gasche*, I **FIND** the ALJ's narrative discussion of Plaintiff's symptoms and the medical source opinions meet the requirements of SSR 96-8p and *Delgado* and that the ALJ adequately explained the basis of his RFC determination.

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined

17

as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). The ALJ found that Plaintiff could perform a full range of sedentary work, which, by definition, means he found she was able to sit for extended periods of time. The ALJ noted that Plaintiff testified her job as a customer service representative was primarily a sitting job and that she could no longer do that job because she could only sit for 10 to 15 minutes at one time. For the reasons noted above, the ALJ rejected this testimony as not being fully credible. While Plaintiff points to Dr. Conway's opinion that she can sit for only 20 minutes at a time, this opinion was properly rejected by the ALJ for the reasons set forth above. The remaining evidence of sitting limitations were self-reports to Dr. Davis and Dr. Bolt and these self-reports are diminished by the ALJ's credibility determination addressed above and by Dr. Davis's release of Plaintiff to work.

The ALJ addressed the issue of Plaintiff's ability to sit when he found she could perform her past work, which he found was a "mostly [] sitting job." (Tr. 17). Based on Plaintiff's activities of daily living and recent trip, her prescribed medications, which the ALJ found were inconsistent with claims of constant and severe radiating pain, the "lack of significantly positive diagnostic studies," her testimony of a pain level of three at the hearing, the state agency opinion (which found Plaintiff could even perform medium exertion work), and other medical evidence, the ALJ found Plaintiff could perform her past and "mostly sitting" job. I find the ALJ's narrative discussion sufficiently meets the requirements of SSR 96-8p and *Delgado* and the ALJ adequately explains the basis for his RFC determination that Plaintiff can perform her past, sedentary-level work.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND** that:[3]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 12] be **DENIED**.

(2) Defendant's motion for summary judgment [Doc. 17] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).